## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ULLIMAN SCHUTTE CONSTRUCTION, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 02-1987 (RMC) |
| EMERSON PROCESS MANAGEMENT POWER & WATER SOLUTIONS f/k/a WESTINGHOUSE PROCESS CONTROL, INC., | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION ON MOTION TO ENFORCE POST-JUDGMENT SETTLEMENT AGREEMENT

Pending before the Court is Defendant's Motion to Enforce Post-Judgment Settlement Agreement or, alternatively, to award costs. Plaintiff responds that there was no settlement and that its notice of appeal robs this Court of jurisdiction to address the issue. As a threshold matter, the Court is confident in its jurisdiction. *See Foretich v. American Broad. Co.*, 198 F.3d 270 (D.C. Cir. 1999). "If enforced, the settlement agreement would require withdrawal of [Defendant's] motion for fees and costs. The motion to enforce, therefore, could moot the motion for fees and costs and, concordantly, any judgment on that motion. The motions were thus interrelated and resolution of the motion to enforce allow[s] the court to resolve the motion for fees and costs in a manner that 'effectuate[s] its decree[].'" *Id.* at 273-74. The question is whether there was a settlement.

## I. BACKGROUND FACTS

The Court entered an Order in the underlying case on March 31, 2006, granting the Motion for Summary Judgment filed by Emerson Process Management Power & Water Solutions f/k/a Westinghouse Process Control, Inc. ("WPC"). *See* Memorandum Opinion [Dkt. #50]. Accordingly, WPC was entitled to file a Bill of Costs, which was due on or before April 20, 2006. *See* Fed. R. Civ. P. 54; LCvR 54.1(a). Plaintiff Ulliman Schutte Construction, LLC ("USC") was also entitled to file a notice of appeal.

Although initially intending to do so, WPC refrained from filing its Bill of Costs. It attributes this inaction to an oral settlement reached by counsel for both parties to the effect that WPC would refrain from seeking costs and USC would refrain from continuing the litigation by appeal. The facts behind the oral agreement are what concern us now. Each counsel has filed an affidavit reflecting his view of reality. They urge the Court to resolve the matter on the papers.

In the late afternoon of Monday, April 17, 2006, Ron Robey, lead counsel for USC, telephoned Dan Ball, lead counsel for WPC, regarding the outcome of the summary judgment motions. *See* Affidavit of Dan H. Ball, ¶ 2, Exhibit 1 to Def.'s Mot. to Enforce Post J. Settlement Agreement ("Ball Aff.") [Dkt. #53]; *see also* Affidavit of Ronald G. Robey ¶ 5, attached to Pl.'s Resp. to Def.'s Mot. to Enforce Post J. Settlement Agreement ("Robey Aff.") [Dkt. #55]. Mr. Robey's call was prompted by his client, Herbert T. Schutte, President of USC. Robey Aff. ¶ 5. Mr. Schutte "had decided not to pursue an appeal." Ball Aff. ¶ 3.[1] Mr. Robey testifies that "I asked Mr.

---

[1]  Mr. Robey does not challenge Mr. Ball's recollection that "Mr. Robey said he had discussed with his client the issue of whether to appeal the summary judgment ruling [and] . . . that Herb Schutte, President of USC, had decided not to pursue an appeal." *See* Ball Aff. ¶ 3. It

Case 1:02-cv-01987-RMC   Document 63   Filed 06/19/07   Page 3 of 15

Ball whether, if USC were to forego its right to appeal the adverse decision, WPC would forego any claim for costs." Robey Aff. ¶ 5. "Mr. Ball said that his staff was already preparing a bill of costs, but that he would check with his client." *Id.* Mr. Ball asked what USC would do if WPC did not agree to waive costs and Mr. Robey responded "in that event that USC likely would pursue an appeal." Ball Aff. ¶ 5. "Immediately after [his] conversation with Mr. Robey, [Mr. Ball] was able to reach [WPC] by telephone near the end of the work day on April 17, 2006." Ball Aff. ¶ 7. WPC agreed to "forego court costs in exchange for USC not pursuing an appeal." *Id.* Mr. Ball immediately called Mr. Robey, who did not answer the phone. *Id.* ¶ 8. Mr. Ball left a message on Mr. Robey's voice mail and "said that my client had accepted his offer [and] reiterated the terms: The defendant would waive recovery of court costs and USC would not pursue an appeal." *Id.* As a result, WPC did not file its Bill of Costs on April 20.

Mr. Robey "left town on a business trip" and did not listen to his own voice messages but his "office communicated . . . the substance of the voice mail message." Robey Aff. ¶¶ 5-6.[2] Mr. Robey "understood the message to be that, in response to my inquiry, WPC would now be willing to drop any claim for costs if USC did not exercise its right to pursue an appeal." Robey Aff. ¶ 6. However, upon his return, Mr. Robey talked with Matthew S. Ulliman, the second member of USC. "We decided, however, on April 25, 2006, that USC would pursue an appeal. [Mr. Robey] immediately communicated this information to Mr. Ball." Robey Aff. ¶ 7.

_____

is therefore conceded.

[2] Mr. Robey remembers that Mr. Ball left him a voicemail message "later that week." Robey Aff. ¶ 6. In fact, the message was left on April 17, 2006, the same day that the two lawyers first discussed the issues of costs and an appeal. Ball Aff. ¶ 8.

In fact, Mr. Robey called Mr. Ball the next day, on the morning of April 26, and left a voice message that he "needed to speak to [Mr. Ball] right away." Ball Aff. ¶ 9. Mr. Ball returned the phone call and left his cell phone number as he was not in his office. *Id.* Mr. Robey "called back a few minutes later." *Id.* "Mr. Robey told me that he could no longer agree not to pursue an appeal. He told me that Matt Ulliman, Vice President of USC, had come back to the office after being out of town and the decision about whether to appeal had been changed." Ball Aff. ¶ 10. "Mr. Ball said that he believed [the lawyers] had already reached a binding agreement." Robey Aff. ¶ 7; Ball Aff. ¶ 11. Mr. Robey said that he "had not made a firm offer to resolve the matter" but "merely was floating the idea to see what [WPC's] reaction would be." Ball Aff. ¶ 11; Robey Aff. ¶ 7 ("I explained to Mr. Ball . . . [that] I had not made a firm and unconditional offer or promise.") Mr. Robey apologized for the "misunderstanding" and said that he would not oppose a motion for leave to file a tardy Bill of Costs. Robey Aff. ¶ 8; Ball Aff. ¶ 11. Mr. Ball responded that they "had an oral agreement to resolve the matter," upon which he had relied, and that he would file a motion to enforce the oral settlement agreement. Ball Aff. ¶ 11; Robey Aff. ¶ 8. Mr. Ball sent Mr. Robey a follow-up email to which Mr. Robey never made a response. *See* Ball Aff., Exh. 1 ("I have been able to discuss this issue with our client. It is our position that we had a binding agreement with you to waive taxable costs in exchange for no appeal by USC. We expect USC to abide by this agreement.")

Mr. Robey asserts that he has been practicing construction law for 28 years, during which time he has negotiated many hundreds of settlements.

> Many times, and it is a common practice, to have discussions as I have indicated that are not firm offers or promises [sic]. Also, it is

> a common, if not a nearly universal practice, to immediately confirm in writing any settlement, especially if the parties are facing deadlines.

Robey Aff. ¶ 9.  Mr. Ball states that he has "reached literally dozens of oral settlement agreements in [his] career of almost 28 years, including several confirmed by voicemail messages.  I cannot recall a circumstance where another party refused to honor such an agreement." Ball Aff. ¶ 14.

## II.  ANALYSIS

### A. Motion to Enforce the Post-Judgment Settlement Agreement: Threshold Matters

It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them.  *See Samra v. Shaheen Bus. & Inv. Group, Inc.*, 355 F. Supp. 2d 483, 493 (D.D.C. 2005) (citing *Autera v. Robinson*, 419 F.2d 1197, 1200, 1200 n.9  (D.C. Cir. 1969)).  An action to enforce a settlement agreement is, at bottom, an action seeking the equitable remedy of specific performance of a contract. *Samra*, 355 F. Supp. 2d at 493.  This is the case even where the parties dispute certain facts related to the formation of the settlement contract.  *Id.*  In this jurisdiction, "[w]hether parties have reached a valid settlement is a question of contract law."  *Id*. at 494 (citing *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001)).  The requirements for a proper showing of the existence of an enforceable settlement agreement, then, are determined by reference to substantive state contract law. *Id*. The necessary elements of a valid contract may vary across jurisdictions, so the court must first determine which jurisdiction's substantive contract law governs the case in order to determine what the moving party must show in order to demonstrate the existence of a valid settlement agreement. *See id*.  The Court must undertake the same choice of law analysis that was necessary to resolve the

cross motions for summary judgment between these parties. *See* Memorandum Opinion, at 10-11 [Dkt. #50].

### B. Choice of Law

The parties participated in post-judgment settlement negotiation over the telephone making it necessary for this Court to decide the proper body of law to apply. *See Young Women's Christian Ass'n of the Nat'l Capital Area v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002) (federal courts sitting in diversity must apply the choice-of-law rules of the forum state). Where several states' substantive contract law is potentially applicable in a contract dispute, federal courts in the District of Columbia apply the local choice of law rules of the District of Columbia courts. *See id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under D.C. law, the first step in the analysis requires that the Court determine whether there is any conflict among the potentially applicable legal standards. *Young Women's Christian Ass'n*, 275 F.3d at 1150 (citing *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985)).

Only if the potentially applicable standards are in conflict will the Court be required to apply the District of Columbia's choice of law rules to determine which standard governs the issues in the case. *See id.* If no conflict exists, it is unnecessary for the court to proceed further in a conflict of laws analysis. *Id.* If a conflict is determined to exist, D.C. law provides that the law of the jurisdiction having the more substantial interest in the resolution of the issues will govern contract disputes. *Id.*; *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997) (noting that the District of Columbia has adopted the approach of the Restatement (Second) of Conflict of Laws § 188). According to the Restatement, in contract cases the "contacts to be taken

-6-

into account...to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject-matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188.

In this case, the disputed settlement agreement was the result of two telephone conversations and a telephone voice message. Ball Aff. ¶¶ 2-8. The relevant jurisdictions for the Court's preliminary inquiry are: (1) Pennsylvania, the principal place of business for WPC and the disputed place of contracting and performance; (2) Ohio, the principal place of business of USC; (3) the District of Columbia, the place of alleged breach of the contract (USC filed an appeal with the D.C. Circuit Court of Appeals, after WPC refrained from filing a Bill of Costs with this Court); (4) Georgia, the place where the offer was made and a place of negotiation; and (5) Missouri, a place of negotiation of the contract.[3]

As an initial matter, it should be noted that the purported settlement agreement in this case is wholly oral. Thus the question of whether oral contracts are enforceable at all under the body of contract law of the various jurisdictions may be a dispositive threshold issue. *See Samra v. Shaheen Bus. and Inv. Group*, 355 F. Supp. 2d 483, 497 (D.D.C. 2005). Under the substantive

---

[3] In its Response to Defendant's Supplemental Authority in Support of Its Motion to Enforce Post-Judgment Settlement Agreement, at 2 [Dkt. #61] USC points out that the first phone conversation was between WPC's counsel, Mr. Ball, in Missouri, and USC's counsel, Mr. Robey, in Georgia. The next event was a phone conversation between Mr. Ball, in Missouri, and his client WPC in Pennsylvania. The telephone voicemail message resulted from Mr. Ball in Missouri calling Mr. Robey, in Georgia. WPC is incorporated in Delaware but has its principal place of business in Pennsylvania. *See* Memorandum Opinion, p. 11 [Dkt. #50]. USC has its principal place of business in Ohio. *Id.*

contract law of most American states, the general rule is that oral contracts are enforceable unless

some specific enactment, such as a statute of frauds, renders a specific category of oral contracts

unenforceable. *Id.* Each of the American state jurisdictions whose law potentially applies in this

case has a statute of frauds; and none of those statutes would prohibit the enforcement of an oral

settlement like the one purportedly formed between USC and WPC.[4]

      As discussed previously, whether there is an enforceable settlement agreement is

determined by reference to substantive state contract law. *United States v. Mahoney*, 247 F.3d 279,

---

[4]In the District of Columbia, the statute of frauds proscribes enforcement of oral contracts
relating to: promises to answer for the debts of third parties; agreements made in consideration of
marriage; sales or transfers of interests in real property; agreements that cannot be performed in
one year from their formation; the creation of trusts in real property; and so forth. *See* D.C. CODE
§§ 28-3502–28-3505 (2001). Oral settlement agreements are generally held to be enforceable in
the District of Columbia. *See, e.g., Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236,
1238 (D.C. 1995). In Georgia, to make the following obligations binding on the promisor, the
promise must be in writing and signed by the party to be charged therewith or some person
lawfully authorized by him: (1) a promise be an executor, administrator, guardian, or trustee to
answer damages out of his own estate: (2) a promise to answer for the debt, default, or
miscarriage of another; (3) any agreement made upon consideration of marriage; (4) any contract
for sale of lands, or any interest in, or concerning lands; (5) any agreement that is not to be
performed within one year from the making thereof; (6) any promise to revive a debt barred by a
statute of limitation; and (7) any commitment to lend money. *See* GA. CODE ANN. § 13-5-30; *see
also Poulos v. Home Federal Savings & Loan*, 385 S.E.2d 135, 136 (Ga. Ct. App. 1989) ("Under
Georgia law, a definite, certain and unambiguous oral contract is a valid and binding
agreement"). In Missouri, the statute of frauds is generally the same as that of Georgia. *See* MO.
ANN. STAT § 432.010 (1992); *see also Bolander v. City of Green City*, 35 S.W.3d 432, 440-41
(Mo. Ct. App. 2000) (noting that settlement agreements are governed by the law of contracts, and
a settlement agreement does not have to be in writing unless the subject matter is within the
statute of frauds). Oral settlement agreements are likewise enforceable in Pennsylvania and Ohio.
*See Pulcinello v. Consol. Rail Corp.*, 784 A.2d 122, 124 (Pa. Super. 2001) ("The enforceability
of settlement agreements is ordinarily determined by the general principles of contract law…An
oral settlement agreement may be enforceable and legally binding without a writing."); *see also
Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002) ("It is preferable that a settlement be
memorialized in writing. However, an oral settlement agreement may form a binding contract.")

285 (D.C. Cir. 2001). While there is not a conflict in the law with respect to the enforceability of oral

settlement agreements generally, the parties disagree about the burden on the moving party to show

the existence of an enforceable settlement agreement. *See* Def.'s Supplemental Authority in Supp.

of Its Mot. to Enforce Post J. Settlement Agreement ("Df.'s Supp. Br.") at 3 [Dkt. #58]; *see also* Pl.'s

Supplemental Brief on Post J. Settlement Agreement (Pl.'s Supp. Br.") at 4 [Dkt. #59]. Specifically,

the question is whether the moving party carries the burden of proving the existence of a settlement

agreement by "clear and convincing evidence" or merely by a "preponderance of the evidence." *Id.*

Here, too, the Court must conduct a conflict of law analysis. *Young Women's Christian Ass'n*, 275

F.3d at 1150 (D.C. Cir. 2002).

Plaintiff USC asserts that "there is no conflict between the law of the possible

jurisdictions." Pl.'s Supp. Br. at 6.   Defendant WPC asserts that the Court's analysis in its

Memorandum Opinion should be relied upon, saying, "Fortunately for this Court, the choice of law

analysis in this case has already been undertaken."  Df.'s Supp. Br. at 3.  The Court believes that

neither of these statements is completely accurate.  The present, disputed, post-judgment settlement

agreement is separable from the contract dispute that was the subject of this Court's Memorandum

Opinion.  The Court should and will undertake a choice-of-law analysis.

As mentioned above, the possible relevant jurisdictions are: Missouri, Georgia, the

District of Columbia, Pennsylvania, and Ohio.  Under Missouri law, "a motion to enforce settlement

is a collateral action which imposes on the party seeking the specific performance the burden of

proving, by clear, convincing and satisfactory evidence, his claim for relief." *Stewart v. M.D.F., Inc.*

83 F.3d 247, 251-52 (8th Cir. 1996) (citing *Randall v. Harmon*, 761 S.W. 2d 278 (Mo. Ct. App.

1988)).    Under Georgia law, settlement agreements are enforceable when there is clear and convincing evidence that an oral settlement agreement was reached by the parties.  *See Jorgenson v. Alsop.*, 524 S.E.2d 272 (Ga. Ct. App. 1999).  The same is true in the District of Columbia.  *See Samra*, 355 F. Supp. 2d 483, 493 (D.D.C. 2005) (citing *Quijano v. Eagle Maint. Servs., Inc.* 952 F. Supp. 1, 3 (D.D.C. 1997) (noting that the "party moving for enforcement of a settlement agreement bears the burden of showing by clear and convincing evidence, that the parties in fact formed a binding agreement...")).  Likewise in Ohio, an alleged settlement agreement must be proven by clear and convincing evidence.  *See Anschutz v. Radiology Assocs. of Mansfield, Inc.*, 827 F.Supp. 1338 (N.D. Ohio 1993).

Pennsylvania does not apply a clear and convincing evidence standard for oral agreements.  Rather, in Pennsylvania, an oral contract must be proved by a preponderance of the evidence.  *See Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, No. Civ. A. 95-1376, 1998 WL 721081 at *13 (E.D. Pa. 1998) (noting that the body of case law that supports the application of the clear and convincing standard is derived from case law requiring a heightened standard in cases of (1) alleged oral modifications to written contract, (2) oral contract to make a will, and (3) claims against a decedent's estate based on oral contract).    In cases involving simple oral contracts, Pennsylvania courts apply the preponderance of the evidence standard.  *Id. See also Lipson v. Jackson Nat'l Life Ins. Co.*, No. Civ. A. 97-8051, 2004 WL 163681 at *6 (E.D. Pa. 2004) ("an oral contract may be established by a preponderance of evidence").  An oral contract in Pennsylvania will be enforceable as long as the nature and extent of the obligation is certain, and the parties themselves agree upon the material and necessary details of the bargain.  *Channel Home Ctrs v. Grossman*, 795

F.2d 291, 298-99 (3d Cir. 1986); *see also Edmondson v. Zetusky*, 674 A.2d 760, 764 (Pa. Cmmw. 1996) (denying existence of a contract because it was not clear and precise; employee and employer never discussed "a specific of employment," so there was no agreement on all the necessary terms to establish oral contract).

Because there is a conflict, the Court will apply the law of the jurisdiction having the more substantial interest in the resolution of the present dispute. *See Samra v. Shaheen*, 355 F. Supp. 2d 483, 500 (D.D.C. 2005); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997). Pennsylvania is the jurisdiction with the greatest interest in the resolution of the issues involved in this case. WPC has its principal place of business in Pennsylvania. *See* Memorandum Opinion, at 11 [Dkt. # 50]. Pennsylvania is the place of contract formation, because Mr. Ball telephoned his client and WPC accepted the offer in Pennsylvania. *See* Pl.'s Resp. to Def.'s Supplemental Authority in Supp. of Its Mot. to Enforce Post J. Settlement Agreement, at 2. Pennsylvania is also the place of contract performance, because WPC directed its counsel to refrain from filing a Bill of Costs. Thus, Pennsylvania law must govern the purported settlement agreement, and all disputes related to the existence and terms of the agreement will be determined under the substantive law of Pennsylvania. *See Nelson v. Insignia/ESG, Inc.* 215 F. Supp. 2d 143, 150 (D.D.C. 2002) (illustrating that contract formation and performance of contract were important factors for determining jurisdiction with greatest interest in resolution of the dispute); *see also Samra*, 355 F.Supp. at 500-01 (applying D.C. choice of law rules and finding that Florida with its preponderance of the evidence standard had the most substantial interest in the resolution of the dispute).

### C. The Merits

Under Pennsylvania law, the settlement of lawsuits is favored, and in the absence of fraud or mistake, courts will enforce an oral or written agreement to settle a legal dispute. *See Peterson v. Ratasiewicz*, Civ. No. 97-16440, 2000 WL 33223702 (Pa. Comm. Pl. Aug. 7, 2000) (citing *Greentree Cinemas Inc. v. Hakim*, 432 A.2d 1039 (Pa. Super. 1981)); *Sch. Dist. of Philadelphia v. Framlau Corp.* 328 A.2d 866 (Pa. Commw. 1974). An oral settlement agreement may be enforceable and legally binding without a writing. *Pulcinello v. Consol. Rail Corp.*, 784 A.2d 122, 124 (Pa. Super. 2001). Principles of contract law govern the enforceability of settlement agreements. *Century Inn Inc. v. Century Inn Realty, Inc.*, 516 A.2d 765 (Pa. Super. 1986). An oral contract may be established by a preponderance of the evidence. *Lipson v. Jackson Nat'l Life Ins. Co.*, Nov. Civ. A. 97-8051, 2004 WL 163681at *6 (E.D. Pa. Jan. 8, 2004). The agreement of settlement will be enforced so long as the material terms of the bargain are agreed upon. *Century Inn*, 516 A.2d at 767. Where parties intend to make a contract and there is a reasonably certain basis upon which the court can grant a remedy, then an agreement will considered sufficiently definite and enforceable. *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1194 (Pa. Super. 1987). If a material term of the settlement is not agreed upon, then, of course, there is no enforceable agreement of settlement. *Miller v. Clay Township*, 555 A.2d 972, 974 (Pa. Commw. 1989).

In the present case, the question is one of contract formation. The Court concludes that the weight of the evidence demonstrates an agreement between counsel after Mr. Schutte decided not to appeal. This conclusion comes from the specificity of Mr. Ball's affidavit and the careful but vague construction of Mr. Robey's, who is in something of a pickle created by the difference in

opinion between the two members of his client.

- Mr. Ball states that on April 17, 2006, Mr. Robey told him that Herb Schutte, President of Plaintiff, "*had decided* not to pursue an appeal."  Ball Aff. ¶¶ 2-3 (emphasis added).  In his later-filed affidavit, Mr. Robey does not dispute that he made this statement.  It is thus conceded.

- Mr. Ball states that on April 26, 2006, Mr. Robey told him that "he could *no longer agree* not to pursue an appeal" because Matt Ulliman had returned "and the decision about whether to appeal *had been changed*."  Ball. Aff. ¶ 10 (emphasis added).  Mr. Robey does not dispute that he made this statement.  It is thus conceded.

- Both parties agree that on April 26, Mr. Robey stated that he had not made a firm offer in their first conversation on April 17.  Ball Aff. ¶ 11; Robey Aff. ¶ 7.  As Mr. Robey phrases it, he had only "asked Mr. Ball whether, if [USC] were to forego its right to appeal the adverse decision, [WPC] would forego any claim for costs."  Robey Aff. ¶ 5.  However, Mr. Ball recalls that "Mr. Robey stated that [USC] would not pursue an appeal if [WPC] would not pursue its right to recover taxable court costs[, which] would total several thousand dollars."  Ball Aff. ¶ 4.

- WPC did not file a timely Bill of Costs, Ball Aff.  ¶ 11; Robey Aff. ¶ 8, although it had been in preparation on April 17.  Robey Aff. ¶ 5.

- Mr. Robey does not challenge the nature of the voice message left for him by Mr. Ball, *i.e.* WPC "had accepted his offer" that WPC "would waive recovery of court costs and USC would not pursue an appeal."  *See* Ball Aff. ¶ 8.  Nor could he, since

he did not listen to his own voice messages and only learned "the substance" of the message from unidentified persons in his office -- that "WPC would now be willing to drop any claim for costs if USC" did not appeal.  Robey Aff. ¶¶ 6-7.  Mr. Robey's recollection cannot control: first, it is double hearsay; second, it is admittedly vague, purporting to reflect the "substance" but not the particulars of the message; and third, it is directly contradicted by Mr. Ball's express statements and actions, both of which are consistent with an agreement between counsel.

• This conclusion is buttressed by Mr. Robey's unchallenged statement to Mr. Ball on April 26 that "he could no longer agree not to pursue an appeal" because Mr. Ulliman "had . . . changed" the decision on whether to appeal.  Ball Aff. ¶¶ 9-10.  The past tense of these statements suggest that Mr. Robey had once agreed not to appeal and could no longer do so.

The record demonstrates a difference of opinion between Mr. Schutte and Mr. Ulliman over whether to pursue an appeal of this Court's ruling.  The record does not support the effort by Mr. Robey to portray a failure to reach agreement *between counsel* by which Mr. Schutte's original decision not to appeal was parlayed into WPC's agreement not to pursue thousands of dollars in costs.  The Court finds that WPC has shown by a preponderance of the evidence that counsel did reach a post-judgment agreement, based on Mr. Schutte's decision not to appeal.  Mr. Robey's affidavit admits critical facts by not challenging them and is too uncertain as to others.  All of the essential elements of an enforceable settlement agreement are in place.  There are no ambiguous or indefinite terms, and the affidavits of WPC's counsel Dan Ball and USC's counsel

Ronald Robey are essentially identical in the material aspects necessary for this Court to enforce the oral post-judgment settlement.

WPC and USC reached a simple, straightforward settlement agreement after this Court entered judgment dismissing the First Amended Complaint.  USC offered not to file a Notice of Appeal of the judgment of dismissal in exchange for a waiver by WPC of its statutory rights to recover taxable costs in the litigation.  WPC accepted this offer.  A party cannot avoid the effects of a valid oral settlement agreement because of second thoughts or because one of the company's principals decides to go in a different direction than the other.  *See North Carolina Fox & Hound, Inc. v. Saul Subsidiary I Ltd. P'Ship*, 367 F. Supp. 2d 932, 944 (M.D.N.C. 2005).

### III. CONCLUSION

This litigation has gone on for over four years, and this Court is convinced that the parties agreed to end it.  Mr. Ball and Mr. Robey reached a straightforward post-judgment settlement agreement.  USC agreed not to file a Notice of Appeal of the judgment of dismissal in exchange for a waiver by WPC of its statutory right to recover taxable costs in the litigation.  This agreement will be enforced and USC must withdraw its Notice of Appeal.  A memorializing Order accompanies this Memorandum Opinion.

Date: June 19, 2007                                      _____/s/_____
                                                         ROSEMARY M. COLLYER
                                                         United States District Judge